**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| ROBERT J. LOWE, JR. and GWENDOLYN M. LOWE, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 2:20-cv-04423-DCN ) ) **ORDER** |
| CITY OF CHARLESTON, | ) ) |
| Defendant. | ) ) ) |

This matter is before the court on plaintiffs Robert J. Lowe, Jr. and Gwendolyn M. Lowe's (the "Lowes") motion for summary judgment, ECF No. 26, and defendant City of Charleston's (the "City") motion for summary judgment, ECF No. 31. For the reasons set forth below, the court denies the Lowes' motion and grants the City's motion.

## I. BACKGROUND

This case concerns the City's denial of the Lowes' zoning application. The Lowes, via their two trusts, own property at 217 Ashley Avenue,[1] on the corner of Cannon Street and Ashley Avenue in downtown Charleston, South Carolina (the "Property"). The Lowes purchased the Property in 2005. Since at least 1978, the Property has been zoned "DR-2F," which is a residential zoning classification.

In 1998, the Charleston City Council adopted the Spring Cannon Corridor Plan, which was intended to, inter alia, concentrate commercial uses along Cannon Street. The Property is one of the only residentially-zoned properties on Cannon Street and the only such property at the intersection of Cannon Street and Ashley Avenue. Specifically, of

---

[1] The Property has two street addresses. Its other address is 117 Cannon Street.

1

the forty properties located at intersections on Cannon Street, thirty-eight are zoned for commercial use, and the only other residentially-zoned property has a commercial use variance. The four properties across Ashley Avenue from the Property are zoned "LB," or limited business, and the four properties across Cannon Street from the Property are also zoned LB. All of those properties, including the Property, have not been rezoned since June 13, 1978.

The Property is also in a short-term rental overlay zone. Parcels in the overlay zone, regardless of zoning classification, may operate as a short-term rental—for example, as listings on websites like Vrbo.com or Airbnb.com—upon receipt of a permit issued by the City. Commercially-zoned parcels are eligible for commercial short-term rental permits, while residentially-zoned parcels are eligible for bed & breakfast permits.

On September 25, 2020, the Lowes applied to rezone the Property from a DR-2F classification to a LB classification. On October 21, 2020, the City Planning Commission conducted a hearing on the zoning application and recommended denying it. On November 24, 2020, the City Council denied the application by unanimous vote. On December 22, 2020, the Lowes filed the instant action against the City. ECF No. 1. On December 1, 2021, the Lowes amended their complaint. ECF No. 24, Amend. Compl. The amended complaint, now the operative complaint, (1) seeks a declaratory judgment declaring the City's denial of the Lowes' zoning application as null and void pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and (2) asserts a violation of the Fourteenth Amendment's Equal Protection Clause under 42 U.S.C. § 1983. Id.

On January 28, 2022, the Lowes filed their motion for summary judgment. ECF No. 26. The City responded in opposition on February 25, 2022, ECF No. 32, and the

Lowes replied on March 18, 2022, ECF No. 36. On February 25, 2022, the City filed its motion for summary judgment, ECF No. 31, and a consolidated memorandum of law, ECF No. 32. The Lowes filed a consolidated response to the motion on March 18, 2022, ECF No. 36, and the City replied on March 25, 2022, ECF No. 37. As such, the motions have been fully briefed and are now ripe for review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.  DISCUSSION

The Lowes and the City submit competing motions for summary judgment.  Both motions seek summary judgment in the moving party's favor on both causes of action.  As the court explains infra, the declaratory judgment claim is dependent on the existence of a valid equal protection claim.  Accordingly, the court first considers the parties' arguments under the Equal Protection Clause before addressing the declaratory judgment claim, ultimately finding that summary judgment on both the equal protection claim and declaratory judgment claim is warranted in the City's favor.

### A.  Equal Protection Claim

The amended complaint alleges that the City's denial of the Lowes' zoning application violated the Fourteenth Amendment's Equal Protection Clause because the City "treated [the] Property differently from similarly situated properties," and there was "no rational basis for such differential treatment."  Amend. Compl. ¶¶ 45–46.  The Lowes further allege that the City singled them out and intentionally treated them differently than other owners of property along Cannon Street.  In response, the City argues that (1) the Lowes are not similarly situated to other Cannon Street property owners, (2) there is no evidence that the City's treatment of the Lowes was intentional, and (3) the City has a rational basis for the denial of the zoning application.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (internal quotation marks and citation omitted).  "To succeed on an equal protection claim, a plaintiff must

first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If this showing is made, the court proceeds to the second step and "determine[s] whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. "The level of scrutiny depends on the type of classification." Sansotta v. Town of Nags Head, 724 F.3d 533, 542 (4th Cir. 2013). When a party has not alleged that it was deprived of a fundamental right or that it was subjected to discrimination based on a suspect classification, a court "will uphold the distinctions drawn by [the defendant] if they were 'rationally related to a legitimate state interest.'" Pulte Home Corp. v. Montgomery Cnty., 909 F.3d 685, 693 (4th Cir. 2018) (quoting Siena Corp. v. Mayor & City Council of Rockville, 873 F.3d 456, 463 (4th Cir. 2017)). Here, the Lowes have not alleged that they were deprived of a fundamental right or subjected to discrimination based on a suspect classification. Therefore, if the court reaches the second step, it must determine if the City's denial of the Lowes' application to rezone the Property from residential to limited business was rationally related to a legitimate state interest. See id.; see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (finding that for a plaintiff to succeed on an equal protection claim brought by a "class of one," she must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). To rebut a defendant's rational reasons for treating a plaintiff differently, the plaintiff carries the "heavy burden of negating every conceivable basis which might reasonably support the challenged classification."

Van der Linde Housing, Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir. 2007).

The court need not reach the question of whether there was a rational basis for the decision to deny the Lowes' zoning application because the Lowes have not identified any similarly situated properties that applied for rezoning and were granted the application. "Similarly situated" means that the other entities "are in all relevant respects alike" to the plaintiff. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). When a plaintiff provides no evidence that she was treated differently from others who are similarly situated, the plaintiff's equal protection claim must fail. Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 440 (4th Cir. 2002). For example, in Tri County Paving, the plaintiff brought an equal protection claim alleging that Ashe County, North Carolina treated it differently from other "permit applicants who sought other sorts of residential and commercial building permits" when the county did not issue a building permit for the plaintiff's proposed asphalt plant. Id. The Fourth Circuit held that the plaintiff's equal protection claim failed in part because the plaintiff only showed that other businesses in Ashe County were granted building permits while the plaintiff's permit was denied. Id. at 441. The court went on to explain that the fact that the county granted permits to other companies was irrelevant because the plaintiff did not show that those companies applied for a building permit to construct a facility with the same environmental and safety concerns as the plaintiff's facility. Id. In other words, the plaintiff failed to show that the county treated the plaintiff differently because there were no other entities that were similarly situated by virtue of having filed a building permit under substantially the same circumstances.

Here, the Lowes have failed to present evidence of properties that are similarly situated to the Property. Unlike the plaintiff in Tri County Paving, the Lowes fail to present any property that received a different outcome on its zoning application. The Lowes contend that the Property is "similar situated to other properties located on Cannon Street and covered by the Spring Cannon Corridor Plan." Amend. Compl. ¶ 44. However, that purported class of property owners is not "similarly situated" to the Lowes because all the properties zoned as LB have been zoned as such since 1978, as evidenced by the City's official zoning map dated June 13, 1978. ECF No. 29-4. In other words, the Property cannot be similarly situated to all properties that are along Cannon Street based on that fact alone. The Lowes have not identified other properties that applied to be rezoned from DR-2F to LB and had their application granted. Indeed, the Lowes acknowledge that there were three other properties zoned DR-2F that applied to be zoned LB. ECF No. 26-4, Lowe Aff. ¶ 14. The City denied all four applications. Id. ¶ 15. If anything, then, the City has treated every similarly situated property exactly the same.

The Lowes further argue that the Property is similarly situated to the commercially-zoned properties on Cannon Street because they are collectively included in the City's Spring Cannon Corridor Plan. Specifically, the Lowes argue that the Spring Cannon Corridor Plan recommends concentrating neighborhood commercial uses to the intersections on Cannon Street, and the Property is the only property at an intersection along Cannon Street that lacks a commercial zoning classification or variance for commercial activity. Additionally, as it relates to the Property, the four properties across Ashley Avenue are residential homes that are commercially zoned while the four properties across Cannon Street are commercially zoned. None of this, however, changes

7

the fact that those other properties are not "in all relevant aspects alike" because they were already zoned LB and, as such, were not treated differently based on an application for commercial zoning reclassification. Like the plaintiff in Tri County Paving, the Lowes simply point to other properties that are zoned differently without considering the differences between those properties and the Lowes' property.

The cases cited by the Lowes further support granting summary judgment in the City's favor. The Lowes cite Sanimax USA, LLC v. City of South St. Paul, 496 F. Supp. 3d 1285 (D. Minn. 2020), for the proposition that as few as two other properties besides the plaintiff's own property may satisfy the "similarly situated" element. It is true that in Sanimax, the court rejected the city's argument that the two other businesses at issue were not substantially similar because they were not in the plaintiff's immediate vicinity. Id. at 1295. Critically, however, the court found that the plaintiff had plausibly alleged that the city had excluded the two other businesses from a zoning amendment but did not do the same for the plaintiff's business. Id. Here, even in the light most favorable to them, the Lowes have merely shown that the City failed to act on the "[p]lan [r]ecommendations" in the Spring Cannon Corridor Plan. See Lowe Decl. ¶ 13 (emphasis added). There is no evidence that in supposedly failing to follow the Spring Cannon Corridor Plan, the City intentionally or purposefully discriminated against the Lowes. Had the City granted other applications for properties to be rezoned from DR-2F to LB, the Lowes may have been able to meet the summary judgment standard, but based on the record evidence, the opposite appears to be true: all applicants were treated the same. The Lowes provide no other evidence of any intentional disparate treatment of them and instead rely on the zoning statistics discussed above to argue that the City

8

intentionally discriminated against them. However, for there to be discriminatory intent, there must be more than "intent as awareness of consequences"; the decisionmaker must have "selected or reaffirmed a particular course of conduct at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." C & H Co. v. Richardson, 78 F. App'x 894, 902 (4th Cir. 2003) (quoting Pers. Adm'r v. Feeney, 442 U.S. 256, 279 (1979)); see also Traversa v. Ford, 718 F. Supp. 2d 639, 645 (D. Md. 2010) (finding that a "general allegation" that the a state commission on human relations did "not normally delay proceedings when a parallel investigation is pending," but did so for the plaintiff, was insufficient to show intentional or purposeful discrimination). Finally, the Lowes cite Braun v. Ann Arbor Charter Tp., but the Sixth Circuit in Braun granted summary judgment in the defendant's favor because the plaintiffs "fail[ed] to allege any specific examples of similarly situated individuals" like the plaintiffs, who had sought rezoning to allow a trailer park and other residential development on their land. 519 F.3d 564, 575 (6th Cir. 2008). Here, there is no genuine issue of material fact as to whether the Lowes were treated differently than owners of similarly situated properties, and summary judgment is warranted in the City's favor on the Lowes' equal protection claim.

Alternatively, even if the court were to find that the City treated the Lowes differently from other similarly situated property owners—which the court does not—the Lowes would have to negate any rational or conceivable basis offered by the City to support the challenged classification. On this point, the City contends that it provided several reasons for its decision to deny the Lowes' motion. First, the City Planning Commission recommended denial of the zoning application because of "potentially intense commercial uses, including short-term accommodations." Amend. Compl. ¶ 26.

9

Then, in its motion for summary judgment, the City notes that the City's Short-Term Rental Ordinance states that in certain zones—like the overlay zone where the Property is located—the City seeks to have a blend of commercial and residential properties. See ECF No. 32 at 8 (citing ECF No. 29-7).

In response, the Lowes argue that the prevention of short-term rental use cannot be a rational basis for denying the Lowes' application because they are already currently entitled to use their property for short-term rental use. Specifically, the Lowes argue that even as a residential property, the Property is permitted up to ten short-term rental units—which is even more than allowed under a commercial zoning classification—and therefore, by denying the zoning application, the City was not preventing the Lowes from using the Property for short-term rental use. ECF No. 36 at 5–6. However, this argument fails to account for the City's statement that the denial was based on a concern for more "intense" commercial use. It is reasonable that the City would be concerned with the use of commercial short-term rental properties compared to the use of residential properties for such purposes. Indeed, the Short-Term Rental Ordinance distinguishes between commercially-zoned properties and residential properties, further supporting the City's point.[2] ECF No. 29-7 at 13–14 (describing commercial short term rental use and bed and

---

[2] The Lowes also argue that the City may not advance the argument that its denial was to ensure that the Property served as a "buffer" between commercial and residential areas because the argument was not provided to the Lowes at the City Council meeting. ECF No. 36 at 5. However, with a class-of-one equal protection claim, "[t]he fact that the[] reasons were not communicated to [the plaintiff] when his application was rejected is irrelevant. To pass muster under rationality review, the plaintiff must rule out all possible reasonable justifications for disparate treatment, not merely the justification provided by the government official." Unruh v. Moore, 326 F. App'x 770, 772 (5th Cir. 2009) (citation omitted). In any case, the buffer argument does not alter the court's ruling because as discussed, the City presented other sufficient reasons at the hearing that were communicated to the Lowes.

breakfast use). Most importantly, even if the court were unconvinced by the City's reason, it is not the court's province to second-guess the City's reasons for its decision so long as they are rational. As the Fourth Circuit has explained, "[i]t is emphatically not the function of the judiciary to sit as a 'super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'" Van Der Linde Housing, 507 F.3d at 293 (quoting Van Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel, 20 F.3d 1311, 1323 (4th Cir. 1994)). A governmental body's policy decisions are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data," and as such, a policy's rationality may not be "judged on the basis of its wisdom, fairness, or logic (or lack thereof)." Id. (quoting F.C.C. v. Beach Comms., Inc., 508 U.S. 307, 315 (1993)). "[J]udicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." Vance v. Bradley, 440 U.S. 93, 97 (1979). The court therefore finds that the City's decision to limit the number of commercial properties based on a concern for their intense usage as short-term rental properties is a rational basis for denying the Lowes' zoning application.

### B. Declaratory Judgment

The court turns next to the Lowes' declaratory judgment claim. A federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three elements are met:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201) (other citations omitted).

"A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution." Id. (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)). The City does not dispute that the case presents an actual controversy. Instead, the City argues that the declaratory judgment cause of action incorporates by reference all the factual allegations underlying the equal protection claim, and a declaratory judgment claim that is repetitious of issues already before the court should be dismissed. However, the authority cited by the City pertains to counterclaims raised under the Declaratory Judgment Act. See Friends of DeReef Park v. Nat'l Park Serv., 2015 WL 12807800, at *9 (D.S.C. May 27, 2015) (quoting Monster Daddy LLC v. Monster Cable Prods., Inc., 2010 WL 4853661, at *5 (D.S.C. Nov. 23, 2010)) ("District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses."). While Friends of DeReef Park does not fully support the City's proposition, the court finds that the City is ultimately correct about the law. The Lowes' declaratory judgment claim merely seeks a remedy for their equal protection claim. See Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat. Res., 151 F. Supp. 3d 496, 502 (E.D.N.C. 2015) ("The Declaratory Judgment Act . . . creates a remedy, not jurisdiction."). Therefore, if the equal protection issues are resolved, the declaratory judgment claim cannot proceed as a practical matter. See Metra Indus., Inc. v. Rivanna Water & Sewer Auth., 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (recognizing, under the first factor, that a "declaratory judgment

serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim" where the same conduct underlies the declaratory judgment and breach of contract claims); accord Kougl v. Xspedius Mgmt. Co., 2005 WL 1421446, at *4 (N.D. Tex. Jun. 1, 2005) (dismissing declaratory actions that sought resolution of matters already to be resolved in the ongoing lawsuit because "[s]eparate declaratory judgment actions would be redundant").  Here, the Lowes' declaratory judgment claim is premised on their equal protection claim.  While the Lowes also briefly allege that declaratory judgment relief is warranted because the City "acted arbitrarily and capriciously," Amend. Compl. ¶ 41, the Lowes failed to develop that argument independently of its equal protection claim.  Even in the Lowes' motion for summary judgment, they acknowledge that their declaratory judgment claim is premised on their equal protection claim.  See ECF No. 26 at 5 ("Third, this Court would not abuse its discretion in declaring Defendant's denial of Plaintiffs' rezoning application in violation of the Equal Protection Clause.").  The court thus declines to allow the declaratory judgment claim to continue because it effectively seeks adjudication on the merits of the equal protection claim.

Moreover, under the second factor, the City argues that if the court dismisses the equal protection claim, there would no longer be any independent basis for the lawsuit because it is entirely premised on federal question jurisdiction.  In their motion for summary judgment, the Lowes agree that jurisdiction is proper via their equal protection claim.  See ECF No. 26 at 5 ("Second, because Plaintiffs allege an equal protection violation, a federal question is presented.").  "In the context of a section 2201 claim for declaratory judgment, the court has jurisdiction over 'suits in which, if the declaratory

judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'"  Rose Acre Farms, 131 F. Supp. 3d at 502 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 19 (1983)); see also Marshall Tucker Band, Inc. v. M T Indus., Inc., 238 F. Supp. 3d 759, 766 (2017) ("In that the Court has dismissed Plaintiffs' federal trademark infringement and trademark dilution claims, the Court no longer has an independent basis of federal jurisdiction over this federal declaratory judgment claim.").  As the court discussed above, the equal protection claim is subject to summary judgment in the City's favor, and the Lowes make no other argument that the declaratory judgment claim presents a federal question beyond the equal protection questions that have already been determined.  Based on these two grounds, summary judgment on the declaratory judgment claim is warranted in the City's favor.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the Lowes' motion for summary judgment and **GRANTS** the City's motion for summary judgment.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**April 8, 2022
Charleston, South Carolina**